**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| THE MUHLER COMPANY, INC., individually and as assignee of Window World of North Charleston, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:17-cv-01200-DCN |
| v. | ) ) | **ORDER** |
| STATE FARM FIRE & CASUALTY CO., | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on plaintiff The Muhler Company, Inc.'s

("Muhler") motion to compel, ECF No. 26. For the reasons set forth below, the court

grants in part and denies in part the motion to compel and further instructs State Farm to

submit supplemental briefing arguing whether any of the following are protected by the

work product doctrine: (1) challenged State Farm internal log notes, (2) Muhler SF 1201–

07, and (3) any challenged documents that State Farm designated as work product in its

privilege log.

## I. BACKGROUND

This case arises out of prior litigation (the "Underlying Case") between Muhler

and Window World of North Charleston, LLC ("Window World"). Muhler is a South

Carolina corporation and a judgment creditor of Window World. ECF No. 1 at ¶ 1.

Defendant State Farm Fire and Casualty Co. ("State Farm") is an insurance company

organized outside of South Carolina that issued a commercial general liability policy,

policy number 99-BF-Q704-6 ("the Policy"), to Window World. Id. ¶¶ 2–3. When

Muhler brought suit against Window World in 2011, State Farm provided a defense for Window World against Muhler's claims and hired counsel, Ian Ford ("Ford"), for that purpose. Id. ¶¶ 6–8; ECF No. 27 at 2. State Farm also retained its own coverage counsel to provide an opinion on whether the damages alleged by Muhler were covered under State Farm's policy with Window World. ECF No. 27 at 2.

State Farm later withdrew its defense of Window World, and Muhler obtained a $3,241,316.26 judgment against Window World on August 8, 2014. ECF No. 1 at ¶¶ 9–10. The judgment was tendered to State Farm on October 10, 2014, and State Farm refused to indemnify Window World for the judgment or to pay Muhler. Id. ¶¶ 11–12. After the judgment was entered, Muhler requested that this court issue an order transferring any of Window World's potential claims against State Farm to Muhler in partial satisfaction of the judgment. Motion for Assignment and to Amend Complaint to Sue State Farm, Muhler v. Window World of N. Charleston, No. 2:11-cv-0851-DCN (D.S.C. Aug. 1, 2016), ECF No. 127. As a result, this court ordered that "[a]ny and all claims and/or proceeds from claims defendant may have against State Farm shall be transferred to plaintiff in partial satisfaction of plaintiff's judgment," effectively assigning Window World's claims to Muhler. Order, Muhler v. Window World of N. Charleston, No. 2:11-cv-0851-DCN (D.S.C. Sept. 27, 2016), ECF No. 130. Now Muhler alleges that, pursuant to the Policy, State Farm is responsible for the entire judgment that Muhler obtained against Window World, plus interest. ECF No. 1 at ¶ 4.

Muhler brings the following causes of action against State Farm: (1) negligence for failing to provide a defense for Window World and then failing to indemnify it in the

Underlying Case; (2) a declaratory judgment action seeking a declaration of the parties' rights under the Policy; and (3) breach of contract of the Policy. Id. ¶¶ 18–29.

Muhler originally filed suit on May 8, 2017. ECF No. 1. On February 12, 2018, Muhler filed a motion to compel production of documents. ECF No. 26. Muhler attached to its motion State Farm's privilege log and a list of challenged redactions and withholdings with each challenge falling into one or more of four sections of objections: (i) non-privileged material conveyed to counsel; (ii) privilege belonging to Window World, not State Farm; (iii) defense budget in underlying case; and (iv) team manager recommendations. ECF No. 26-3. State Farm responded on February 26, 2018, ECF No. 27, and Muhler replied on March 5, 2018, ECF No. 28. On April 4, 2018, the court ordered State Farm to produce unredacted versions of the disputed documents to the court for in-camera review.

The matter has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir.

1995) (citing <u>Erdmann v. Preferred Research, Inc. of Ga.</u>, 852 F.2d 788, 792 (4th Cir. 1988)).

## III.  DISCUSSION

First, the court will consider the relationships between Window World, State Farm, Ford, and State Farm's coverage counsel to determine whether attorney-client privilege exists between any of the parties.  Then it will address the question of whether Window World assigned its attorney-client privilege to Muhler when Window World assigned its claims to Muhler, allowing Muhler to waive the privilege and requiring State Farm to produce the privileged documents.  The court will then analyze the documents Muhler challenges to determine if they are in fact privileged.  State Farm claims attorney-client privilege or work-product protection for a variety of different documents, and Muhler disputes these claims.  Finally, the court will discuss the work product doctrine and its applicability to the challenged documents in this case.

### A.  Attorney-Client Privilege Among the Parties

Before determining if the assignment of claims included the assignment of attorney-client privilege, the court must first decide if attorney-client privilege applies to the various relationships between Window World, State Farm, Ford, and State Farm's coverage counsel.  The court's in-camera review of the withheld documents indicates the following relationships under which there may be attorney-client privilege: (1) Window World and Ford; (2) State Farm and Ford; and (3) State Farm and its coverage counsel.

A federal court sitting in diversity jurisdiction must apply the privilege law of the state's highest court—here, the Supreme Court of South Carolina.  Fed. R. Evid. 501; <u>Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.</u>, 296 F.3d 308, 312 (4th Cir.

4

2002).  Under South Carolina law, "[t]he attorney-client privilege protects against disclosure of confidential communications by a client to his attorney."  State v. Owens, 424 S.E.2d 473, 476 (S.C. 1992).  The privilege consists of the following essential elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Tobaccoville USA, Inc. v. McMaster, 692 S.E.2d 526, 529–30 (S.C. 2010) (quoting State v. Doster, 284 S.E.2d 218, 219–20 (S.C. 1981)).  "Because the attorney-client privilege exists for the benefit of the client, the client holds the privilege."  In re Grand Jury Proceedings #5 Empanelled January 28, 2004, 401 F.3d 247, 250 (4th Cir. 2005).  "[T]he burden of establishing the privilege rests upon the party asserting it."  Wilson v. Preston, 662 S.E.2d 580, 584 (S.C. 2008).

The scenario at issue here is the attorney-client relationship formed when an insurance company retains counsel to represent one of its insured.[1]  The South Carolina Supreme Court is clear that an attorney-client relationship, and therefore attorney-client privilege, exists between the insured and the attorney hired to represent her.  Sentry Select Ins. Co. v. Maybank Law Firm, LLC, __ S.E.2d __, 2018 WL 2423694, at *1 (S.C.

---

[1]  The court notes that this issue is distinct from a related issue—whether an insurance company waives its attorney-client privilege when it denies liability in a bad faith case by the insured.  See, e.g., ContraVest Inc. v. Mt. Hawley Ins. Co., 2016 WL 11200705 (D.S.C. Dec. 12, 2016).  This question was recently certified to the South Carolina Supreme Court by the Fourth Circuit.  In re Mt. Hawley Ins. Co., 2018 WL 3203033 (4th Cir. June 19, 2018).  Here, the issue is whether there is attorney-client privilege between an insurance company and the attorney it hires to represent the insured in a suit between the insured and a third party, not whether a privilege existed between the insurance company and its own coverage counsel that was subsequently waived by asserting an affirmative defense during a bad faith suit.

May 30, 2018).  The more difficult question arises with regard to the insurance company.  As the South Carolina Supreme Court explained, the insurance company is in a "unique position" because "pursuant to the insurance contract, the insurer has a duty to defend its insured" and "compensate the attorney."  Id.  Moreover, insurance contracts normally "require[] the insurer to pay the settlement or judgment" imposed against the insured, and the insurer "has a right to investigate and settle claims as a representative of its insured."  Id.  These rights and responsibilities are consistent with an attorney-client relationship.  However, the court also explicitly stated that "[t]he attorney owes no separate duty to the insurer" and "the insurer may not intrude upon the privilege between the attorney it hires and the attorney's client—the insured."  Id. at *3.

While South Carolina law does not appear to recognize attorney-client privilege between an insurance company and the attorney it retains to represent the insured, there is still some lesser protection for their communication under the common interest doctrine.  See State Farm Fire & Cas. Co. v. Admiral Ins. Co., 225 F. Supp. 3d 474, 480–82 (D.S.C. Feb. 4, 2016) (finding the common interest doctrine to be available under South Carolina law in a relationship between an insurer, an insured, and counsel retained for the insured by the insurer).  The common interest doctrine, while "not a privilege itself," "protects the transmission of data to which the attorney-client privilege or work product protection has attached when it is shared between parties with a common interest in a legal matter."  Tobaccoville USA, Inc., 692 S.E.2d at 531.  Yet because "[a] common interest does not create an attorney-client relationship," this doctrine "protects a narrower range of communication between [the insurer] and [the counsel retained by the insurer for the insured] than would be privileged if [the insurer] were [the counsel]'s client."  State Farm

Fire & Cas. Co., 225 F. Supp. 3d at 482.[2]  Therefore, the only privileged communication between the insurer and the insured's counsel is communication that is privileged as to the insured and its counsel, which is then disclosed by the counsel to the insurer.  Id.

### 1.  Window World and Ford

As discussed above, there is clearly an attorney-client relationship between an insured party and the counsel retained to represent the party.  Therefore, communication solely between Window World, the insured, and Ford, the counsel representing Window World, is potentially privileged.  As the client, Window World holds this privilege.

### 2.  State Farm and Ford

State Farm argues that email correspondence between State Farm and Ford are attorney-client privileged.  ECF No. 27 at 6.  As the party asserting privilege, State Farm bears the burden of establishing the privilege.  See Wilson, 662 S.E.2d at 584.  Yet State Farm cites no cases that support the principle that communication between an insurance company and the counsel it retains for an insured party is privileged.  As a result, State Farm fails to meet its burden to establish an attorney-client privilege with Ford.

For some reason, State Farm did not alternatively argue that the common interest doctrine protects its communications with Ford; however, the court believes it is important to discuss this issue.  As explained in State Farm Fire & Cas. Co., South Carolina law supports the use of the common interest doctrine in the relationship between State Farm, Window World, and Ford.  225 F. Supp. 3d at 481.  Under this doctrine, not

---

[2]   While the range of communication protected under attorney-client privilege is narrower under the common interest doctrine, the court notes that "a broader set of communications might be protected as work product."  State Farm Fire & Cas. Co., 225 F. Supp. 3d at 482

all communications between State Farm and Ford are protected by attorney-client privilege. The only communications protected are communications from Ford to State Farm that transmit Window World's privileged information. As a result, the only communication between State Farm and Ford that is privileged is correspondence from Ford that sends information that is privileged between Window World and Ford.

### 3. State Farm and Coverage Counsel

State Farm retained coverage counsel to provide an opinion on whether Muhler's alleged damages were covered under the Policy. ECF No. 27 at 2. Muhler contends that State Farm improperly claims privilege over "the substance of information provided by State Farm to counsel, whether coverage counsel or the counsel hired by State Farm to defend its insured in the underlying suit." ECF No. 26-1 at 3 (internal quotations omitted). Muhler argues that this description "suggests that the information is protected simply because it was, at some point, shared with counsel," which does not make the information privileged. ECF No. 26-1 at 4. The court interprets this argument to apply to both Ford and State Farm's coverage counsel. As discussed above in footnote 1, the issue of whether communications between an insurance company and its coverage counsel is privileged in a claim for denial of insurance benefits is currently being decided by the South Carolina Supreme Court. As such, the court reserves ruling on this issue.

### B. Assignment of Window World's Privilege to Muhler

The next issue is whether the assignment of claims from Window World to Muhler includes the assignment of Window World's attorney-client privilege with Ford. Muhler argues that the assignment of Window World's claims includes the assignment of its privileges. ECF No. 26-1 at 5–6. If that is the case, then State Farm may not withhold

documents related to the Underlying Case on the basis of Window World's privilege because the privilege actually belongs to Muhler now.[3]  In response, State Farm asserts that because there was no express assignment of privileges, the privilege still belongs to Window World, and State Farm cannot waive Window World's privilege.  ECF No. 27 at 2–4.  However, State Farm concedes that if the court holds that the assignment included attorney-client privilege, State Farm will produce portions of the claim file and correspondence to which Window World, as the holder of the privilege, would be entitled.  Id. at 4.

South Carolina state law has not squarely addressed the issue of whether merely assigning a claim includes the assignment of attorney-client privilege.  However, other jurisdictions have found that an assignment of claims does not include an assignment of attorney-client privilege absent an explicit waiver of privilege.  In Klein v. Fed. Ins. Co., 2014 WL 3408355 (N.D. Tex. July 14, 2014), the United States District Court for the District of Northern Texas held that a party cannot waive its attorney-client privilege

---

[3]  In Muhler's motion to compel, Muhler phrased the issue as whether Window World's attorney-client privilege with Ford in the Underlying Case is now assigned to Muhler.  ECF No. 26-1 at 5.  Therefore, the question is whether the privilege belonging to Window World in Window World's privileged communications with Ford about the Underlying Case now belongs to Muhler.  If the privilege now belongs to Muhler, Muhler can waive the privilege, and State Farm must produce Window World's privileged documents relating to the Underlying Case.  In Muhler's reply, it frames the issue differently than it did in its motion to compel.  In its reply, Muhler explains that the issue is "whether State Farm can assert a privilege belonging to Window World against Window World's assignee, Muhler, with regard to claims originally belonging to Window World against State Farm."  ECF No. 28 at 1 (emphasis added).  This issue relates to whether State Farm can claim attorney-client privilege against Muhler, as Window World's assignee, in the instant case challenging State Farm's denial of coverage in the Underlying Case.  This question is the question currently pending before the South Carolina Supreme Court, see footnote 1, and therefore, the court reserves ruling on this issue.

simply by assigning its rights without explicitly addressing the waiver of privilege. Id. at *10–11. It explained that "[n]othing in the language of [the] assignment suggests that [the assignor] intended to waive the attorney-client privilege or to assign to the [assignee] the right to assert the privilege." Id. at *11. The court in Catino v. Travelers Ins. Co., Inc., 136 F.R.D. 534 (D. Mass. May 28, 1991), engaged in a similar discussion. Id. at 536. The court reserved ruling on the attorney-client privilege issue but explained that when the insured/assignor assigned her rights, she also executed a waiver of attorney-client privilege. Id. As a result, the assignee "possess[ed] all of [the insured/assignor]'s rights" and there could be "no attorney-client privilege between [the counsel retained to represent the insured/assignor] and [the insurer] as against [the assignee]." Id.

In Klein, the court relied on a Texas state case, In re Cooper, 47 S.W.3d 206 (Tex. Ct. App. 2001), that closely parallels the facts of the instant case. 2014 WL 3408355 at *10. In In re Cooper, there was an underlying suit in which the plaintiff sued the insured. 47 S.W.3d at 207. After losing the suit, the insured assigned his claims against his insurer to the plaintiff, who then filed suit against the insurer to satisfy the judgment in the underlying suit. Id. The trial court, in determining that the insured waived his attorney-client privilege when he assigned his claims and rights to the plaintiff, reasoned that the waiver of privilege is "an integral and fundamental part of the assignment" and without the waiver, the assignment was not effective. Id. at 208–09. The Texas Court of Appeals disagreed, first observing that under Texas state law, attorney-client privilege may only be waived under enumerated exceptions, including voluntary disclosure. Id. at 208. It then explained that the insured's assignment did not contain language waiving his

attorney-client privilege, and without explicit language of a voluntary disclosure, the privilege was not waived.  Id. at 209.

In South Carolina, the attorney-client privilege "is based upon a wise policy that considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to this professional adviser." Tobaccoville USA, Inc., 692 S.E.2d at 529 (quoting Owens, 424 S.E.2d at 476).  The South Carolina Supreme Court explained that "the rule of evidence which holds as inviolable professional communications between attorney and client is one of the most important, and in all forms must be maintained in all its integrity."  State v. James, 12 S.E. 657, 660 (S.C. 1891).  Under South Carolina law, a client may waive her attorney-client privilege only if the waiver is "distinct and unequivocal."  State v. Hitopoulus, 309 S.E.2d 747, 749 (S.C. 1983) (citing James, 12 S.E. at 661).  "[W]here an implied waiver is claimed, caution must be exercised, for waiver will not be implied from doubtful acts." State v. Thompson, 495 S.E.2d 437, 439 (S.C. 1998) (quoting 28 Am. Jur. 2d Estoppel and Waiver § 160 (1966)).

Given the sanctity of the attorney-client privilege and South Carolina's disfavor of implied waiver of the privilege, the court declines to hold that an assignment of claims includes an assignment of attorney-client privilege without an explicit waiver.  In the instant case, Window World did not explicitly waive its privilege in a manner that was "distinct and unequivocal."  Window World's only assignment was for "[a]ny and all claims and/or proceeds from claims defendant may have against State Farm."  Order, Muhler v. Window World of N. Charleston, No. 2:11-cv-0851-DCN, ECF No. 130.  This assignment contains no language about waiving privileges.  Moreover, Window World

did not voluntarily assign its potential claims against State Farm to Muhler, as this court ordered it to do so, making it impossible for Window World to implicitly and voluntarily waive its privilege. As a result, Window World still holds its attorney-client privilege with Ford, and State Farm may not produce the documents that contain Window World's privileged information absent a distinct and unequivocal waiver by Window World.

### C. Application of Attorney-Client Privilege

Having determined that Muhler may not waive Window World's privilege to any documents for which Window World holds the privilege, the court must now discern which of the documents requested by Muhler are in fact privileged as to Window World. In order to determine which State Farm documents are privileged, the court conducted an in-camera review of the following groups of documents: (1) communication between Window World and Ford; (2) communication between State Farm and Ford; (3) invoices sent from Ford to State Farm for his legal representation of Window World; and (4) State Farm's internal log notes within its claim file for Window World regarding the Underlying Case. In addition, the court will determine whether State Farm's litigation budget and a State Farm team manager's recommendations related to the Underlying Case are privileged. ECF No. 26-1 at 6–7.

"The determination of whether or not a communication is privileged and confidential is a matter for the trial judge to decide after a preliminary inquiry into all the facts and circumstances." Tobaccoville USA, Inc., 692 S.E.2d at 529 (citing State v. Love, 271 S.E.2d 110, 112 (S.C. 1980)). In order for communication between an attorney and a client to be privileged, the communication must be confidential in nature, Love, 271 S.E.2d 112, and it "must relate to a fact of which the attorney was informed by

his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding," Marshall v. Marshall, 320 S.E.2d 44, 47 (S.C. Ct. App. 1984) (citations omitted). The privilege applies when the communication originates either from the client or the attorney. Id. However, "[n]ot every communication within the attorney and client relationship is privileged." Doster, 284 S.E.2d at 220. This is due to the fact that "[t]he public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice. Id. (citing N.L.R.B. v. Harvey, 349 F.2d 900 (4th Cir. 1965), Sepler v. State, 191 So.2d 588 (Fla. App. 1966)). For example, "[c]orrespondence that merely transmit[s] documents to or from an attorney, even at the attorney's request for purposes of rendering legal advice to a client, are neither privileged nor attorney work product." Hege v. Aegon USA, LLC, 2011 WL 1791883, at *5 (D.S.C. May 10, 2011) (quoting Guidry v. Jen Marine LLC, 2003 WL 22038377, at *2 (E.D. La. Aug. 25, 2003)).

### 1. Communications Between Window World and Ford

After an in-camera review, the court determines the following communications between Window World and Ford do not contain any confidential information related to Ford's legal opinion or services and must be produced: Muhler SF 200, Muhler SF 212, Muhler SF 356, Muhler SF 369, Muhler SF 573, Muhler SF 582, MUHLER00000052PROD, MUHLER00000586PROD, MUHLER00000453PRIV–MUHLER00000454PRIV, MUHLER00000474PRIV, and MUHLER00000475PRIV.

The following communications between Window World and Ford consist of correspondence simply transmitting documents to or from Ford and must be produced:

Muhler SF 372, Muhler SF 373, Muhler SF 397, Muhler SF 566, Muhler SF 608, Muhler SF 610, Muhler SF 633, Muhler SF 641, Muhler SF 643, Muhler SF 648, Muhler SF 658, Muhler SF 704, Muhler SF 713, Muhler SF 776, Muhler SF 789, Muhler SF 804, Muhler SF 811, Muhler SF 829, Muhler SF 839, Muhler SF 856, Muhler SF 952, Muhler SF 969, Muhler SF 984, Muhler SF 1044, Muhler SF 1069, Muhler SF 1071, Muhler SF 1102, MUHLER00000056PROD, MUHLER00000065PROD, MUHLER00000082PROD, MUHLER00000130PROD, MUHLER00000139PROD, MUHLER00000148PROD, MUHLER00000244PROD, MUHLER00000290PROD, MUHLER00000325PROD, MUHLER00000762PROD, MUHLER00000764PROD, MUHLER00000050PRIV, MUHLER00000051PRIV, MUHLER00000056PRIV, MUHLER00000057PRIV, MUHLER00000197PRIV, MUHLER00000317PRIV, MUHLER00000344PRIV, MUHLER00000368PRIV, MUHLER00000369PRIV, MUHLER00000373PRIV, MUHLER00000427PRIV, MUHLER00000471PRIV, and MUHLER00000473PRIV.

The following communications between Window World and Ford involve confidential information related to Ford's legal opinion or services and are privileged: Muhler SF 355, Muhler SF 360, Muhler SF 366, Muhler SF 596, Muhler SF 915, Muhler SF 998, Muhler SF 1027, Muhler SF 1082–99, Muhler SF 1149, MUHLER00000049PRIV, MUHLER00000052PRIV, MUHLER00000053PRIV–MUHLER00000054PRIV, MUHLER00000055PRIV, MUHLER00000216PRIV, MUHLER00000314PRIV, MUHLER00000322PRIV–MUHLER00000341PRIV, MUHLER00000342PRIV, MUHLER00000374PRIV, and MUHLER00000389PRIV.

## 2. Communications between State Farm and Ford

After an in-camera review, the court determines the following communications between State Farm and Ford do not contain any confidential information related to Ford's legal opinion or services that was communicated between Window World and Ford, and thus must be produced: Muhler SF 129–30, Muhler SF 131, Muhler SF 147–51, Muhler SF 152, Muhler SF 201, Muhler SF 204, Muhler SF 214, Muhler SF 351–52, Muhler SF 353–54, Muhler SF 517, Muhler SF 525, Muhler SF 528, Muhler SF 531, Muhler SF 553, Muhler SF 723, Muhler SF 1178–79, MUHLER00000050PROD, MUHLER00000157PROD, MUHLER00000160PROD–MUHLER00000161PROD, MUHLER00000166PROD, MUHLER00000169PROD, MUHLER00000190PROD, MUHLER00000193PROD–MUHLER00000194PROD, MUHLER00000289PROD, MUHLER00000007PRIV–MUHLER00000008PRIV, MUHLER00000016PRIV, MUHLER00000017PRIV–MUHLER00000019PRIV, MUHLER00000026PRIV–MUHLER00000027PRIV, MUHLER00000033PRIV, MUHLER00000034PRIV–MUHLER00000035PRIV, MUHLER00000036PRIV, MUHLER00000063PRIV–MUHLER00000064PRIV, MUHLER00000128PRIV, MUHLER00000146PRIV–MUHLER00000148PRIV, MUHLER00000164PRIV–MUHLER00000166PRIV, MUHLER00000174PRIV–MUHLER00000176PRIV, MUHLER00000187PRIV, MUHLER00000189PRIV–MUHLER00000192PRIV, MUHLER00000195PRIV–MUHLER00000196PRIV, MUHLER00000218PRIV, MUHLER00000222PRIV, MUHLER00000239PRIV, MUHLER00000260PRIV–MUHLER00000263PRIV, MUHLER00000265PRIV, MUHLER00000293PRIV, MUHLER00000304PRIV, MUHLER00000315PRIV, MUHLER00000372PRIV, MUHLER00000379PRIV,

MUHLER00000380PRIV, MUHLER00000390PRIV–MUHLER00000392PRIV, MUHLER00000399PRIV, MUHLER00000406PRIV– MUHLER00000408PRIV, MUHLER00000409PRIV– MUHLER00000410PRIV, MUHLER00000429PRIV, MUHLER00000439PRIV–MUHLER00000443PRIV, MUHLER00000444PRIV– MUHLER00000448PRIV, MUHLER00000455PRIV–MUHLER00000456PRIV, MUHLER00000463PRIV, MUHLER00000464PRIV, MUHLER00000465PRIV, MUHLER00000466PRIV–MUHLER00000469PRIV, MUHLER00000470PRIV, and MUHLER00000472PRIV.

The following communications between State Farm and Ford consist of correspondence simply transmitting documents to or from Ford; they are not privileged and must be produced: Muhler SF 142, Muhler SF 371, Muhler SF 506, Muhler SF 543, Muhler SF 849, Muhler SF 1110, Muhler SF 1153, MUHLER00000099PROD, MUHLER00000640PROD, MUHLER00000806PROD, MUHLER00000095PRIV, MUHLER00000162PRIV, MUHLER00000294PRIV, MUHLER00000371PRIV, MUHLER00000397PRIV, and MUHLER00000424PRIV.

In addition, the following communications between State Farm and Duffy & Young, the law firm that Window World retained after Ford withdrew from the Underlying Case, are not privileged as there is no relationship between State Farm and Duffy & Young. As such, these documents must be produced: Muhler SF 205, MUHLER00000449PRIV–MUHLER00000450PRIV, and MUHLER00000451PRIV– MUHLER00000452PRIV.

The following communications between State Farm and Ford retransmit confidential and privileged information communicated between Window World and Ford

and are privileged: Muhler SF 209–10, Muhler SF 211, Muhler SF 519–24, Muhler SF

1121, MUHLER00000177PRIV, MUHLER00000321PRIV, MUHLER00000387PRIV–

MUHLER00000388PRIV, MUHLER00000403PRIV, MUHLER00000416PRIV–

MUHLER00000417PRIV, and MUHLER00000457PRIV–MUHLER00000462PRIV.

The following communications are internal State Farm communication that are

not privileged: MUHLER00000141PRIV, MUHLER00000188PRIV,

MUHLER00000316PRIV, MUHLER00000367PRIV, and MUHLER00000428PRIV.

### 3.  Invoices for Legal Services Sent from Ford to State Farm

"[C]ourts have held that correspondence relating to a legal services bill generally

does not qualify under the attorney-client privilege."  Southampton Pointe Prop. Owners

Ass'n, Inc. v. OneBeacon Ins. Co., 2013 WL 12241840, at *3 (D.S.C. July 15, 2013)

(citations omitted).  This applies with equal force under the common interest doctrine.

See State Farm Fire & Cas. Co., 225 F. Supp. 3d at 482 n.4 (citing United States v.

(Under Seal), 774 F.2d 624, 628 (4th Cir. 1985)).

Several entries on State Farm's privilege log describe emails from Ford to State

Farm "attaching invoice[s]" for "legal services rendered in defense of suit by Muhler

against insured-client."  See, e.g., entries 98; 110; 116.  Communications between Ford

and State Farm that do not involve Window World's privileged information are not

privileged, but even if they were, legal service bills are not covered by the common

interest doctrine.  As a result, this correspondence is not privileged, and the court orders

State Farm to produce these emails and invoices.

### 4.  State Farm's Litigation Budget

Muhler argues that the litigation budget for the Underlying Case prepared by Ford

for State Farm is not privileged.  ECF No. 26-1 at 6.  In response, State Farm contends

that the budget is privileged because "it reveals or reflects the attorney's mental impressions and advice as to the defense." ECF No. 27 at 6. Neither party cites any case law to support its argument.

As discussed above, the only communication between State Farm and Ford that is privileged is privileged information between Ford and Window World that is subsequently sent to State Farm. A litigation budget prepared by Ford for State Farm is likely not a document that would be shared with Window World. As a result, the budget is not privileged, and the court orders its production.

### D. Work Product Doctrine

Many of the documents on State Farm's privilege log that Muhler challenges are designated as both attorney-client privileged and work product. Both parties cursorily mention the work product doctrine in their pleadings; however, neither provides any substantive argument as to why any of the challenged documents are or are not protected work product.

The work product doctrine protects from discovery any "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The proponent of work product protection must establish that the "driving force behind the preparation of each requested document" is the prospect of litigation. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir.1992). Moreover,"[t]he application of the work product doctrine is particularly difficult in the context of insurance claims." Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 536, 541–42 (N.D. W. Va. 2000). This is due

in large part to the difficulty of distinguishing between an insurance company's ordinary business handling insurance claims and "the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 967 F.2d at 984. As a result, in order for the court to determine whether certain documents are protected by the work product doctrine, it must know the "driving force behind the preparation of each requested document."

### 1. State Farm's Internal Log Notes Reflecting Communications with Ford

Muhler contends that some of State Farm's internal log notes are either not privileged or if privileged, the privilege belongs to Window World, not State Farm. ECF No. 26-3 at 1. State Farm's internal log notes are notes made by State Farm employees in Window World's claim file that provide information and updates on the Underlying Case. State Farm responds that the log notes reflect communications with Ford and, as such, are privileged.

After an in-camera review, the court orders State Farm to clarify whether it considers its internal log notes to be protected under the work-product doctrine and why. The log notes all appear to be the same type of document, yet in its privilege log, State Farm labels only some as "work product" and not others. In an effort to avoid unnecessarily adding to the jurisprudence by deciding if these documents are privileged, the court instructs State Farm to submit supplemental briefing explaining why each of the challenged privilege log entries for State Farm log notes is or is not work product. State Farm should provide an explanation for each challenged privilege log entry.

### 2. State Farm Team Manager Recommendation

Finally, Muhler asserts that a new suit memo containing redactions of State Farm's team manager recommendations are not privileged. ECF No. 26-1 at 7. This document is an internal memo from a State Farm team manager and a State Farm claim representative to a State Farm section manager providing information about the Underlying Case. Muhler objects to a redaction that occurs after the text that reads "TM recommends that we (1) monitor the discovery in the defense case to see what factual documentation is submitted by the plaintiff to substantiate their claim and then [redacted]." Id.; see also ECF No. 26-11 at 7. In response, State Farm clarifies that it has redacted both advice from Ford and advice from its own coverage counsel in this document, and State Farm argues that confidential advice from counsel does not lose its privilege simply because it is reiterated internally within State Farm. ECF No. 27 at 6–7.

After its in-camera review, the court has determined that the specific portion Muhler cites as being part of the team manager's recommendation is information from State Farm's coverage counsel. As mentioned above in footnote 1, it is premature to rule on whether this information is privileged until the South Carolina Supreme Court rules on the certified question. The only portion of redacted information that reflects communication with Ford is the portion in the final paragraph beginning with "Defense."

This information is similar to the information that appears in State Farm's internal log notes. The court determines that State Farm needs to explain whether Muhler SF 1201–07 is protected by the work product doctrine. While State Farm did not label this document work product in its privilege log, like the log notes, the court wishes not to unnecessarily add to the jurisprudence and determine if privilege exists. The court

instructs State Farm to submit supplemental briefing explaining if and why this document is work product.

Given the lack of argument from either party on this issue, the court simply does not have enough information to determine whether any of the other documents claiming protection under the work product doctrine are in fact protected work product. If State Farm wishes to continue to assert that certain documents are covered by the work product doctrine, the court requires State Farm to identify each challenged document it believes is protected work product and explain why the "driving force behind the preparation" of the document was to prepare for litigation. As discussed above, the court also orders State Farm to explain if and why each of the challenged State Farm internal log notes and the State Farm team member recommendation is protected by the work product doctrine.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Muhler's motion to compel and further instructs State Farm to submit supplemental briefing identifying whether any of the following are protected by the work product doctrine: (1) challenged State Farm internal log notes, (2) Muhler SF 1201–07, and (3) any challenged documents that State Farm designated as work product in its privilege log.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 25, 2018**
**Charleston, South Carolina**